UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ROBERT JACKSON,**

    **Plaintiff,**

    v.

**PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD,**

    **Defendant.**

Civil Action No. 12-208 (JEB)

## MEMORANDUM OPINION

Plaintiff Robert Jackson was employed until January 2012 at Defendant Public Company Accounting Oversight Board. He brought this suit asserting that PCAOB breached his implied employment contract by retaliating against him for providing information in an internal investigation and also that it wrongfully terminated him. In now moving to dismiss his Amended Complaint, Defendant correctly argues that Plaintiff has not successfully pled either claim. The Court, consequently, will grant Defendant's Motion.

**I.    Background**

According to Plaintiff's Amended Complaint, which must be presumed true for purposes of this Motion, he was employed since December 2008 as "Deputy Director, Operations and Infrastructure of the Office of Information Technology ('OIT')" at PCAOB. Am. Compl., ¶ 6. Two years later, "Defendant commenced an internal investigation regarding OIT governance and staffing." Id., ¶ 8. "Plaintiff was one of three senior staff of OIT" who was interviewed, and he provided "truthful information . . . including his perception that OIT's senior leadership was lacking." Id., ¶¶ 10-11. The final report of the investigation was released in October 2011

and included a number of negative comments about OIT, which Plaintiff alleges reflect his statements.  Id., ¶¶ 12-13.

After the report was released, Defendant added a senior position, Deputy Chief Administrative Officer (DCAO), to whom Plaintiff's superior now reported.  Id., ¶ 15.  On December 9, 2011, this new DCAO "met with Plaintiff, made numerous unfounded allegations that Plaintiff's conduct and job performance were poor, removed Plaintiff's staff and threatened that Plaintiff's employment was tenuous."  Id., ¶ 17.  After complaining to Defendant's ethics officer about this, Plaintiff met with its in-house lawyer, who ultimately "proposed that Plaintiff's employment terminate in exchange for a severance."  Id., ¶¶ 19, 22.  These "actions made Plaintiff's workplace intolerable and caused Plaintiff to sustain severe emotional distress and mental anguish."  Id., ¶ 23.  Ultimately, he alleges, his "work conditions were so intolerable that he was constructively discharged from his employment on January 30, 2011 [*sic*, presumably 2012]."  Id., ¶ 27.

Plaintiff brings one cause of action, in which he claims, "By and through its conduct, Defendant breached its anti-retaliation policy and constructively discharged the Plaintiff from his employment."  Id., ¶ 29.  Defendant has now filed a Motion to Dismiss.

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor.  Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993).  The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she

must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

### III. Analysis

It is somewhat difficult to discern precisely what cause(s) of action Plaintiff intends from his sole count.  Potential ones are breach of contract, wrongful termination, and retaliation. Although the terms "breach of contract" and "wrongful termination" never appear in the Amended Complaint, Plaintiff's Opposition makes clear that these are intended claims.  See Opp. at 6 ("Plaintiff has alleged causes of action for breach of contract and wrongful termination.").  On the other hand, Plaintiff never argues that the Complaint asserts a separate retaliation claim, so the Court may assume it did not, and it will thus treat Defendant's argument on that point as conceded.  See Lewis v. District of Columbia, 2011 WL 321711, at *1 (D.C. Cir. 2011) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'") (quoting Hopkins v.

Women's Div., General Bd. Of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).  The Court, accordingly, will address the contract and termination claims in turn.

    A.  Breach of Contract

Plaintiff does not assert that Defendant has breached a term of a specific employment contract since he concedes he is an at-will employee.  Opp. at 1-2.  Instead, his claim rests on an alleged "violation of Defendant's written anti-retaliation policy that is contained in its Employment Policies and Procedures Manual."  Am. Comp., ¶ 2.  More specifically, Plaintiff alleges that this policy "prohibits retaliation against its employees 'for providing truthful information in an internal . . . investigation.'"  Id., ¶ 5 (ellipses in Amended Complaint).  This policy, he contends, "creates a contract for which Defendant is liable for breaching."  Opp. at 4.

Defendant vigorously disputes this theory, arguing that such a policy in an employee manual or handbook is not enforceable as an employment contract where a disclaimer exists.  Mot. at 8-10.  Defendant is correct.  The District of Columbia Court of Appeals has explained that, although "the terms of an employer's personnel or policy manual may be sufficient to raise a jury question as to whether the manual creates contractual rights for the employee . . . , such implied contractual rights can be disclaimed, and the legal effect of such a disclaimer is, in the first instance, a question for the court to decide."  Futrell v. Dept. of Labor Federal Credit Union, 816 A.2d 793, 806 (D.C. 2003) (citations and internal quotations marks omitted).

In this case, Defendant has quoted liberally from the Manual, the language of which the Court may consider on a motion to dismiss because Plaintiff has incorporated it by reference into his Complaint.  See Rand v. Sec'y of the Treasury, 816 F. Supp. 2d 70, 71 (D.D.C. 2011).  The Manual states, in pertinent part, on page 1 under the heading in bold enlarged capitals of "DISCLAIMER":

> These policies and procedures are not intended to provide fixed rules for dealing with all problems that arise in the workplace; rather, they set forth general guidelines, subject to modification or departure by the PCAOB as circumstances may require. . . .
>
> <u>Nothing in these policies or procedures is intended to serve as a contract or to create enforceable rights on the part of employees</u>.

Opp., Attach. 1 (Declaration of Christine Kearns), Exh. A (Employment Policies and Procedures Manual) at 1 (emphasis added).

In addition, as Defendant points out, the Manual also provides: "Employees at the PCAOB are employed on an at-will basis, which means that . . . the PCAOB may terminate an employee's employment at any time for any lawful reason, or for no reason, with or without notice. A modification of an employee's at-will status may only be made by a written agreement signed by the employee and the Chairman of the PCAOB." <u>Id.</u> at 2. Finally, the Manual contains an acknowledgment form, in which employees state that they "understand and agree that . . . [¶] [their] employment with the PCAOB is 'at-will.' No PCAOB policy is an employment contract . . . ." <u>Id.</u> at 80.

It is difficult to conceive of a clearer disclaimer that an employer could make. The Court will thus hold, as a matter of law, that PCAOB's anti-retaliation policy did not create judicially enforceable contractual rights. Such a ruling is consistent with D.C. Court of Appeals cases and cases from this federal District. See, e.g., <u>Futrell</u>, 816 A.2d at 806 (affirming trial court's conclusion that employee guidebook did not create implied employment contract where it clearly stated that it "'does not constitute an expressed or implied employee contract'"); <u>Boulton v. Institute of Intern. Educ.</u>, 808 A.2d 499, 505 (D.C. 2002) (affirming trial court's rejection of plaintiff's argument that employee handbook created implied contract where it "included 'precise' language disclaiming any intent to create contractual rights or obligations and

5

specifically preserving the 'at-will' nature of the employment relationship") (footnote omitted); Grove v. Loomis Sayles & Co., L.P., 810 F. Supp. 2d 146, 149 (D.D.C. 2011) (granting motion to dismiss breach-of-contract claim based on language in employee handbook and holding that "[e]ven if the employer has provided its employees with an employee handbook, the handbook is not enforceable as an employment contract if it disclaims the establishment of contractual obligations and explicitly provides that employment may be terminated at-will") (citations omitted).

Plaintiff's sole authority to the contrary is Scott v. Merck & Co., 2010 WL 4941994 (D. Md. 2010), in which a Maryland district court denied summary judgment to an employer in a breach-of-contract case based on language in company policies. Even if the facts of the case were on all fours with those here – a determination the Court need not make – this Court is, of course, bound to follow law in the District of Columbia. While a consideration of Maryland law might well be helpful in a circumstance in which D.C. law is unsettled, that is not the case here. This Court must follow the clearly articulated doctrine set forth by the District of Columbia Court of Appeals. It will, accordingly, dismiss Plaintiff's claim for breach of contract based on language in the Manual.

B.  Wrongful Termination

Plaintiff's Opposition explains that he is also bringing a claim for wrongful termination. Opp. at 6. Although the Court has serious concerns about whether Plaintiff's allegations of constructive discharge are even sufficient to pursue a wrongful-termination action, the Court need not decide this question. This is because, even assuming Plaintiff was constructively discharged, he has failed to plead a wrongful-termination cause of action.

In considering Plaintiff's claim for wrongful termination, the Court starts with the general proposition that "in the District of Columbia . . . an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991) (citations omitted). In Adams, the D.C. Court of Appeals held that "there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Id. at 34.

The DCCA then expanded this exception six years later in its *en banc* decision in Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997). The plaintiff in Carl was a nurse who was terminated after she testified in the City Council against the hospital's interests and also as an expert witness for plaintiffs in malpractice cases. Id. at 160. The Court held that the "'very narrow exception' created in Adams should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." Id. A majority of the DCCA – as constituted by those joining Judge Terry's concurrence and Judge Steadman's dissent – held that "the recognition of any such [future public-policy] exception must be firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." Id. at 162 (Terry, J., concurring). In addition, "[t]his court should consider seriously only those arguments that reflect a clear mandate of public policy- *i.e.,* those that make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between

the policy thus declared and the conduct at issue in the allegedly wrongful termination." Id. at 164 (Terry, J., concurring) (footnotes omitted).

In this case, Plaintiff never mentions any Constitutional provision, statute, or public policy in his Complaint. He alleges only that his termination (via constructive discharge) violated Defendant's policies. See Compl., ¶¶ 2, 24, 29. Even in his Opposition, Defendant only generally cites what he calls "the public policy exceptions to at-will employment under District of Columbia law." Opp. at 6. This clearly does not suffice. See Davis v. Gables Residential/H.G. Smithy, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) ("Plaintiff's wrongful discharge claim is deficient, however, because it does not identify any public policy purportedly violated by his termination."); Chisholm v. District of Columbia, 666 F. Supp. 2d 96, 117 (D.D.C. 2009) ("The plaintiff does not point to any fundamental public policy expressed in the constitution or the statutes of the District of Columbia that support her position, but rather points to the general policy of the Courts' Comprehensive Policies . . . ."); Martin v. American Univ., 1999 WL 1125168, at *2 (D.C. Cir. 1999) ("it is not clear that the code provisions [namely, 'the District's codes that regulate nurses'] on which Dr. Martin relies articulate the type of public policy necessary to trigger the public policy exception") (citation omitted); Lurie v. Mid-Atlantic Permanente Medical Group, P.C., 729 F. Supp. 2d 304, 326 (D.D.C. 2010) ("Even if one accepts plaintiff's account of himself as a whistleblower punished for his good deeds, plaintiff is unable to identify an appropriate public policy on which to base his claim."); cf. Liberatore v. Melville Corp., 168 F.3d 1326, 1331 (D.C. Cir. 1999) ("In his brief, Liberatore cites both federal and District of Columbia law proscribing the improper storage of drugs.") Freas v. Archer Services, Inc., 716 A.2d 998 (D.C. 1998) (permitting wrongful-termination case to proceed where employee was terminated after suing employer for violating statute that prohibits deductions

from employee's paycheck for workers' compensation insurance premiums, and complaint cited particular statute that employer's behavior violated).

As Plaintiff's claim for wrongful termination does not fit within the coverage of the public-policy exception, it cannot move forward.

### IV. Conclusion

Because Plaintiff does not survive this Motion, an Order issued this day will dismiss the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 2, 2012